**UNITED STATES of America**

v.

**Thomas J. ASSENZA et al.**

**No. 71–254–Cr–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 1, 1972.

John L. Briggs, U. S. Atty., and Robert S. Yerkes, Asst. U. S. Atty., M.D. Fla., Jacksonville, Fla., for plaintiff.

John A. DeVault, III, Jacksonville, Fla., for defendant James Newell Taylor.

G. Kenneth Norrie, Jacksonville, Fla., for defendant Dennis Jack Campbell.

## OPINION AND ORDER

WILLIAM A. McRAE, Jr., Chief Judge.

The considerations relevant to defendants' motions for preliminary examinations in this case involve an assessment of the status of interlocutory orders issued by a United States Magistrate, and suggest an examination of problems raised by 18 U.S.C. § 3060.

On Saturday, November 20, 1971, ten persons were arrested without warrants by agents of the United States Bureau of Narcotics and Dangerous Drugs.

They were immediately brought before the United States Magistrate, who advised them of their right to remain silent and to have counsel. Finding that no formal charges had yet been filed, the Magistrate gave the government until the following Monday, November 22, within which to file charges, and delayed consideration of preliminary examinations until the defendants had proper notice of the crimes charged.

With the exception of the present two movants, Taylor and Campbell, all defendants had counsel at the proceedings held on November 22, and at that time agreed that preliminary examinations would be held twenty days thereafter on December 13, 1971. Taylor and Campbell were tentatively included in this schedule, pending their efforts to secure counsel. They appeared with counsel on December 13, at which time all ten defendants were informed by the Magistrate that a grand jury indictment had been returned the same morning against each of them, and had rendered any preliminary examination "moot and inappropriate." Objections to the Magistrate's refusal to hold the preliminary examinations were overruled, and an order was entered to that effect.

■■ Taylor and Campbell are now before the Court on renewed motions for preliminary examinations. Rather than present their contentions to the Magistrate as requests for reconsideration of his decision, they have approached the Chief Judge of the district seeking, in effect, a reversal of the Magistrate's order. Given the undisputed facts (1) that the ruling was interlocutory, and (2) that the case has not completed omnibus hearing procedures, and hence remains within the judicial authority of the Magistrate, the Court declines to reach the merits of movants' position. The office of United States Magistrate was established by Congress for the purpose of expediting the work of federal district courts, not for the purpose of duplicating it. A system enabling interlocutory orders entered by the Magistrate to be immediately presented for review by a District Judge would hardly be an improvement over old procedures. (*Cf.* United States v. Thomas, 333 F. Supp. 910 (D.Alaska, 1971).)

It is true, of course, that where a case is transferred from one District Judge to another, the latter normally has authority to amend orders previously entered by his brother. Such actions are rare, however, and generally involve unusual circumstances. Although it is admitted that orders of the United States Magistrate should be no *more* immune, it seems reasonable, if not imperative, that his interlocutory rulings be equally so. In its present posture this case is still in the Magistrate's hands. Movants' relief, if any, lies through recourse to the Fifth Circuit Court of Appeals.

Even if the Court were to reach the substance of the position taken by Taylor and Campbell, it does not appear that relief would be in order. In essence, they correctly note that because they were not represented by counsel on November 22, the Magistrate did not bind them to the agreement setting the hearings for December 13. They therefore argue that under 18 U.S.C. § 3060[1] they are entitled to a preliminary examination notwithstanding the indictment re-

---

1. 18 U.S.C. § 3060 Preliminary Examination

(a) Except as otherwise provided by this section, a preliminary examination shall be held within the time set by the judge or magistrate pursuant to subsection (b) of this section, to determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it.

(b) The date for the preliminary examination shall be fixed by the judge or magistrate at the initial appearance of the arrested person. Except as provided by subsection (c) of this section, or unless the arrested person waives the preliminary examination, such examination shall be held within a reasonable time following initial appearance, but in any event not later than—

(1) the tenth day following the date of the initial appearance of the arrested person before such officer if the arrested person is held in custody without any provision for release, or is held in custody for failure to meet the conditions of release imposed, or is released from

turned on December 13. They base this conclusion upon three premises:

1) subsection (e) of § 3060 delineates the only circumstances in which a grand jury indictment preempts the requirement of a preliminary examination;

2) subsection (e) predicates such preemption upon compliance with subsection (b) (2) where, as here, the defendants are released on bond;

3) there was no such compliance in this case.

In providing factual support for their position, movants note that subsection (b) (2) of § 3060 requires that a preliminary examination be held within 20 days of a defendant's "initial appearance." They argue that this appearance occurred November 20, making their preliminary examination due on or before December 10. If the proceedings on November 22 are viewed as their "initial appearance," however, movants make a more attenuated assertion that the December 13 indictment was not returned *"prior* to the *date* fixed for the preliminary examination" (emphasis

added) as required by subsection (e). Under either interpretation they contend that subsection (e) does not have application to this case by reason of the Court's failure to comply with subsection (b) (2), and hence the indictment could not have obviated their right to a preliminary examination.

■ The Court is inclined to agree with movants' assertion that November 20 marked their "initial appearance" within the meaning of § 3060, even though the absence of defense counsel rightly caused the Magistrate to delay discussion of preliminary examinations. Since the central purpose of the statute is explicitly to limit the time that an individual can be held or restricted prior to a judicial finding of probable cause, legal niceties diluting its impact would seem wholly inconsistent with Congressional intent. Movants' third premise, above, seems valid.

■ It is the first and second premises urged by Taylor and Campbell which give the Court concern. In directing attention to the expiration of the 20 day period in subsection (b) (2), they too quickly brush past the remedy

custody only during specified hours of the day; or

(2) the twentieth day following the date of the initial appearance if the arrested person is released from custody under any condition other than a condition described in paragraph (1) of this subsection.

(c) With the consent of the arrested person, the date fixed by the judge or magistrate for the preliminary examination may be a date later than that prescribed by subsection (b), or may be continued one or more times to a date subsequent to the date initially fixed therefor. In the absence of such consent of the accused, the date fixed for the preliminary hearing may be a date later than that prescribed by subsection (b), or may be continued to a date subsequent to the date initially fixed therefor, only upon the order of a judge of the appropriate United States district court after a finding that extraordinary circumstances exist, and that the delay of the preliminary hearing is indispensable to the interests of justice.

(d) Except as provided by subsection (e) of this section, an arrested person who

has not been accorded the preliminary examination required by subsection (a) within the period of time fixed by the judge or magistrate in compliance with subsections (b) and (c), shall be discharged from custody or from the requirement of bail or any other condition of release, without prejudice, however, to the institution of further criminal proceedings against him upon the charge upon which he was arrested.

(e) No preliminary examination in compliance with subsection (a) of this section shall be required to be accorded an arrested person, nor shall such arrested person be discharged from custody or from the requirement of bail or any other condition of release pursuant to subsection (d), if at any time subsequent to the initial appearance of such person before a judge or magistrate and prior to the date fixed for the preliminary examination pursuant to subsection (b) and (c) an indictment is returned or, in appropriate cases, an information is filed against such person in a court of the United States.

\*  \*  \*  \*  \*

provided in subsection (d) for its violation. This latter provision plainly states that where an arrested person has not been accorded the hearing required by subsection (b), he "shall be discharged from custody or from . . . any other condition of release . . . ." (18 U.S.C. § 3060(d) ). By their own argument, this relief was available to movants from December 11 forward, and it appears to be the only remedy offered by the statute. If they had moved the Court for such relief before the return of the indictment on December 13, dismissal of all restrictions upon them would have been proper. Yet it is equally clear that the Court would have been without authority to do more. An order granting a preliminary examination at that point would have involved legislating a supplement to the remedy provided in subsection (d), and would have allowed movants to examine the probable cause for charges under which they were no longer held.

The Court is at a loss to understand how Taylor and Campbell find themselves in a stronger posture for purposes of this motion *after* the return of the indictment than they were *before* such return. On the contrary, the face of § 3060 indicates that their position has been considerably weakened. As noted above, the statute's only provision for relief against delayed preliminary examination is contained in subsection (d), which includes the proviso that any discharge pursuant to its authority is made "without prejudice . . . to the institution of further criminal proceedings against [the accused] upon the charge upon which he was arrested." This remedy, then, is no longer available to movants. If they had utilized it when it was available, they would nonetheless be back in court under the present indictment, with no cause to demand a preliminary examination. Their failure to use it cannot provide such cause.

Taylor and Campbell argue finally that their motion should be granted as a means of protecting indigents who are held beyond the subsection (b) time allowance with neither court-appointed counsel nor a personal knowledge of § 3060. It is indeed unrealistic to expect an arrested person to have an independent familiarity with the procedural intricacies of a legal code (hence *Gideon*), but it is the practice in this District to appoint counsel for indigents as soon as is reasonably possible—and certainly well within the periods delimited by § 3060(b). Expectably, neither movant has alleged that he was without counsel on December 11.

A consideration perhaps more relevant to the indigency problem noted by movants is the fact that a post-indictment preliminary examination hardly seems a step toward its solution. The defendant would still have lost any opportunity to avail himself of the relief in subsection (d), and it is not clear what the hearing itself could achieve. The discovery rights once recognized in these examinations, (*see*, e. g., Ross v. Sirica, 127 U. S.App.D.C. 10, 380 F.2d 557 (1967); Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965) ) appear precluded by the explicit statement in § 3060(a) that the examination's purpose is "to determine *whether there is probable cause* to believe that an offense has been committed and that the arrested person committed it." [Emphasis added.] In view of the grand jury's finding in this case, such a quest would indeed appear "moot and inappropriate." *See*, United States v. Hinkle, 307 F.Supp. 117 (D.D.C.1969); United States v. Meyers, 303 F.Supp. 1383 (D.D.C.1969). Further, it might raise questions of equal protection for those who are either denied examination because they utilized subsection (d) remedies prior to indictment, or because they were indicted either before arrest or before expiration of the subsection (b) allowances.

Nor does United States v. Green, 305 F.Supp. 125 (S.D.N.Y.1969), cited by movants in support of their contentions, suggest a conclusion contrary to that reached here. The defendants in *Green*

were indeed granted preliminary examinations, but only after a finding that their First Amendment rights had been chilled by unreasonable delay of the hearing, used by the government to prepare and strengthen the case for grand jury presentation. No such facts have been adduced here, and it may be of determinative significance that the order in *Green preceded* any return of grand jury indictments.

■■ The conclusions suggested here reject, of course, movants' contention that § 3060(e) states the only circumstances in which return of an indictment renders a preliminary examination inappropriate. By its own terms, this subsection has reference only to the status of preliminary examinations "in compliance with subsection (a)" which in turn deals only with those set "pursuant to subsection (b)." Movants have successfully convinced the Court that their examination was not scheduled within the dictates of subsection (b); its viability, therefore, is not considered in the explicitly limited purview of subsection (e).

The motions are denied.