516 P.2d 670

The STATE of New Mexico on the relation of Juan MORENO and David Moreno, Petitioners-Appellants,

v.

Richard I. FLOYD, Magistrate for Division I, Eddy County, New Mexico, Respondent-Appellee.

No. 9712.

Supreme Court of New Mexico.

Dec. 7, 1973.

Dow & Feezer, Carlsbad, for Juan Moreno.

Walker & Estill, Carlsbad, for David Moreno.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Sp. Asst. Atty. Gen., Augustin T. Gurule, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

OMAN, Justice.

Petitioners sought and secured from the District Court of Eddy County a preliminary writ of prohibition directed to Respondent, the magistrate for division I of said county. The writ commanded Respondent, who was conducting a preliminary hearing upon third degree felony charges pending against Petitioners, to desist and refrain from additional action in said criminal proceedings until the further order of the district court and until that court should hear the petition for a permanent writ of prohibition upon its merits.

The matter was heard on the merits on December 18, 1972. Although a copy thereof does not appear in the transcript of the record before us on this appeal, the parties have asserted that on February 14, 1973 the district court entered an "Order Dismissing and Quashing the Preliminary Writ of Prohibition." We accept this assertion as true. A decision of the district court entered February 15, 1972, consisting of findings of fact and conclusions of law, which does appear in the record before us, supports such an order. We affirm that order.

Except for additional facts recited hereinafter incident to our disposition of the individual points relied upon for reversal, the facts essential to an understanding of the issues raised on this appeal are:

(1) Petitioners were charged in the magistrate court over which Respondent presides with having committed the crime of aggravated battery, which is a third degree felony. Magistrate courts have no trial jurisdiction over such offense, but do have authority to conduct preliminary examinations upon charges therefor. Section 36–3–4, N.M.S.A.1953 (2nd Repl.Vol. 6, 1972).

(2) Attorneys were appointed to represent Petitioners under the Indigent Defense Act, §§ 41–22–1 through 10, N.M.S.A.1953 (2nd Repl.Vol. 6, 1972).

(3) Prior to the commencement of the preliminary examination before Respondent upon the charges against Petitioners, the attorneys appointed to represent Petitioners requested of Respondent on behalf of Petitioners that the preliminary hearing be stenographically reported and transcribed, and that Petitioners be furnished a certified copy of the transcript at the State's expense. This request was denied.

(4) Pursuant to instructions from the State Court Administrator addressed to all district judges and magistrates, Respondent offered to have the proceedings recorded on a tape by a Norelco Carry-Corder portable tape recorder which had been furnished by the State for that purpose and to make the tape and a recorder available for the use of Petitioners and their attorneys should Petitioners be bound over to the district court to stand trial on the charges against them.

(5) Thereupon the attorneys moved the district judge who had appointed them to be allowed to withdraw as attorneys for Petitioners. Their stated reason therefor was that they had had many years experience in the practice of criminal law before all the courts of the State of New Mexico, and that they could not adequately and competently represent Petitioners unless

furnished with a certified written transcription of the records and proceedings in the magistrate court, including the preliminary hearing. The motion was denied and the attorneys were instructed to continue their representation of Petitioners.

(6) The district judge who heard the petition for writ of prohibition upon its merits made the following pertinent findings:

(a) "That the Respondent is the Magistrate of a Magistrate Court, has jurisdiction to hold preliminary hearings of the defendants [Petitioners] and his actions in denying a written transcript requested by the attorneys in the preliminary hearing herein was done by authority of law and has not deprived defendant Petitioners herein of the right to due process of law and of equal protection of the laws.

(b) "Respondent's refusal to allow a written transcript does not violate Section 41-22-3, N.M.S.A., 1953 Comp., the Indigent Defense Act, in that no evidence has been presented showing that the representation of the Petitioners has not been 'to the same extent as a person having his own counsel.'

(c) "That the denial to the Petitioners of a certified written transcript does not deprive them of a proper record upon which to base their cross examination of prosecution witnesses and impeachment of such witnesses at the trial so long as they are provided with a recording as is allowed under Section 41-23-55, N.M.S.A., 1953 Comp. (1972 P.S.).

(d) "That the tape recording offered to the Petitioners is admissible in evidence at the trial for impeachment and other purposes.

(e) "That the tape recording offered the Petitioners will furnish the Petitioners the opportunity to be prepared to challenge any contradiction by the witness at the trial.

(f) "That the granting of a tape recording provides the Petitioners with adequate facilities for discovery and for trial preparation.

(g) "That the providing of a tape recording for the Petitioners provides them with adequate facilities for the purpose of appeal.

(h) "That the Petitioners have failed to show that a written transcript is in any way inherently a better form of preservation of testimony than that provided by a tape recording.

(i) "That a transcription from a stenographic tape recording can be changed by the person transcribing the shorthand tape.

(j) "That the state legislature has not appropriated funds to pay for written transcripts for indigent defendants.

(k) "That the attorney or attorneys representing the defendant [Petitioners] if he is [they are] bound over for trial to the district court will have the opportunity to listen to a sound recording and will not have to .rely upon a written record for the purpose of impeachment or examining witnesses.

(l) "That the Petitioners have been offered the use of a proper machine on which to play the tape recording record of the preliminary hearing."

We shall consider the three points relied upon for reversal in a slightly different order from that in which they are presented in the brief in chief. We first consider the contention that the district "COURT COMMITTED ERROR IN HOLDING THAT A NORELCO CARRY-CORDER PORTABLE CASSETTE TAPE PROVIDES AN ADEQUATE RECORD OF THE PRELIMINARY HEARING."

Petitioners particularly contend their attorneys were not furnished with the proper tools with which to represent them at trial or on appeal, should they be convicted. Their claim is that a tape recording of the proceedings in the preliminary hearing, together with a proper machine on which to play this recording, are inadequate tools for these purposes, and that the only adequate tool is a typewritten copy of a court reporter's transcription of stenographic notes of the proceedings, which the report-

er has certified to be an accurate report of the proceedings.

In addition to the findings of fact by the district court above quoted and which are pertinent to this issue, none of which has been directly attacked as being unsupported by substantial evidence, the district court concluded: (1) "There is no inherent difference between a written transcript and an electronically recorded transcript"; (2) "Ability to pay costs of written transcripts might make representation for a paying defendant more convenient, but there is no inherent difference in that the spoken word is captured in both cases"; (3) "There was no evidence of sufficient nature presented to show that there is an inherent advantage between a written transcript and one that is electronically recorded."

We appreciate there seems to be confusion of fact and law in some of the findings and conclusions, but we agree with the district court that the record clearly supports the ultimate fact that a tape recording of the proceedings at the preliminary hearing would be an adequate record of these proceedings for the purposes of preparation for trial, for use at trial and on appeal, should an appeal prove necessary.

We fully recognize that it has long been the practice in New Mexico for attorneys to use certified, typewritten transcriptions of prior testimony of witnesses as a basic tool for trial preparation and cross-examination of these witnesses if called to testify at a trial. However, certified written reports of prior testimony, or written prior statements of witnesses, are not alone useable or admissible in evidence for these purposes, and we do not understand Petitioners to so contend. See State v. Gonzales, 77 N.M. 583, 425 P.2d 810 (1967); Franklin's Earth-Moving, Inc. v. Loma Linda Park, Inc., 74 N.M. 530, 395 P.2d 454 (1964); Brown v. General Insurance Company of America, 70 N.M. 46, 369 P.2d 968 (1962); Kirchner v. Laughlin, 6 N.M. 300, 28 P. 505 (1892); State v. Carlton, 82

N.M. 537, 484 P.2d 757 (Ct.App.1971), cert. denied, 82 N.M. 534, 484 P.2d 754 (1971); 3 & 4 Jones on Evidence, Civil and Criminal, §§ 15:15, 26:2–5 (6th ed. Gard 1972); Annot., 11 A.L.R.2d 30, 89–101, 155–165 (1950). Petitioners do contend written transcripts are more easily used for these purposes than are tape recordings. Their experienced, court-appointed attorneys sincerely feel that they will be handicapped without a certified, typewritten copy of a court reporter's transcription of the preliminary hearing. However, at oral argument before us they conceded they had never tried using a tape recording in preparation for trial or at trial. We are of the opinion that they are mistaken in their belief that they will be handicapped by the use of a tape recording.

An audio recording of oral statements, conversations, questions and answers is not equal to an audio visual recording thereof, but it is far superior to a written transcription. It adds a most important and significant dimension to the understanding and evaluation of the spoken words. We agree with the district court that a tape recording is adequate for trial preparation, for use at trial and for purposes of appeal, and that the record on this appeal fails to show that a written transcript is a better form of preserving testimony than a tape recording thereof.

The tape recording of that portion of the preliminary hearing, which had been conducted prior to service on Respondent of the preliminary writ of prohibition, was played before the district court, Petitioners, Petitioners' attorneys and the Respondent. The district court announced it would listen to the tape for tone and quality. The record on this appeal is devoid of any question as to the tone or quality of the recording, and there is no indication that it in any way fails to constitute an accurate record of the proceedings purportedly recorded thereon.

Petitioners contend that a recording could be altered by a relatively simple op-

eration by someone who had access to the tape and who was so motivated. This is true. It is also true that a written transcription of a tape recording could contain inaccuracies by reason of either honest mistakes or dishonest design on the part of the transcriber. It is equally true, and obviously more likely, that a transcription of stenographic notes will contain honest errors, and it is just as likely that dishonest changes will be made in stenographic notes or the transcription thereof as will be made in a tape recording. The dishonest are resourceful enough to accomplish changes in either, if presented an opportunity and a reason to do so.

An affidavit of a United States magistrate was received into evidence by stipulation, and therein it was stated:

"In connection with the official duties of this Court [United States magistrate court], I have presided at two hundred and five (205) preliminary hearings from April 1971 down to the date of this affidavit [December 13, 1972]. With perhaps five (5) exceptions, all such hearings were conducted using a sound-recording device.

"In my judgment, the sound recordings in this Court properly preserve the record for appellate review. I find no inherently prejudicial defect in the use of a sound recording for the trial record."

Petitioners particularly rely upon Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In that case certiorari was granted so that the court could determine whether the rule announced in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) was applicable to the furnishing of a transcript of the trial record for use on the retrial of a case which had ended in a mistrial. It was held that the principle announced in Griffin and its progeny was applicable and a state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective trial defense or appeal.

However, in the Britt case, no question was raised as to whether some other form of recording of the prior proceedings would not have served just as well. In fact the decision of the court in that case was that the defendant was not entitled to a transcript because " * * * the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request." Britt v. North Carolina, supra, 404 U.S. at 229, 92 S.Ct. at 435, 30 L.Ed.2d at 405. The court referred to this informal alternative, which was available to defendant, as an apparently substantial equivalent to a transcript.

We find it unbelievable that a reading by a court reporter of his notes of a mistrial is as satisfactory for the purposes of preparation for a retrial as an audible and accurate sound recording of the prior proceedings.

The adoption of the view of Petitioners would be to constitutionally limit records of judicial proceedings to a certified transcript of a court reporter's notes. This cannot be the law in view of the far more complete, informative and impressive audio and visual records which can now be made of judicial proceedings. This court has long recognized that the trier of the facts —the trial court or the trial jury—which participates in the trial proceedings with first hand observations of the trial judge, the trial attorneys, the trial atmosphere, and, particularly, the trial witnesses and their testimony, is better able to determine the credibility of the witnesses and the weight to be given their testimony than is an appellate court, which is presented with a written record of the trial proceedings. See Durrett v. Petritsis, 82 N.M. 1, 474 P. 2d 487 (1970); Farmers and Stockmens Bank of Clayton v. Morrow, 81 N.M. 678, 472 P.2d 643 (1970); Gray v. Grayson, 76 N.M. 255, 414 P.2d 228 (1966); Hoskins v. Albuquerque Bus Company, 72 N.M. 217, 382 P.2d 700 (1963); Rice v. First Nat. Bank in Albuquerque, 50 N.M. 99, 171 P.2d

318 (1946); Lopez v. Townsend, 42 N.M. 601, 82 P.2d 921 (1938).

If the typed record were entirely adequate to determine the credibility of the witnesses, the truth of their testimony, and the weight to be accorded thereto, there could be no reason for holding that these are matters to be determined by the trier of the facts and not by the appellate court.

It is only logical that in preparing for a trial the more information a trial attorney has as to the witnesses, what their testimony will likely be, whether or not they are likely to be believed, and whether their testimony is consistent with the truth, the better prepared the attorney can and should be to competently try the case on behalf of his client. An audio record of the former testimony of witnessses would seem clearly superior to a written transcript thereof in making these evaluations and in preparing for trial. We fail to understand why the use of an audio recording is more cumbersome and less effective in trial than a written record. In any event, if the trial attorney feels more at ease with a written record, he can make written notes of pertinent portions of the prior testimony from the audio record, or, if he is so inclined and thinks it advisable, he can make a complete written copy thereof for use at trial.

We next consider Petitioner's contention that the district "COURT COMMITTED ERROR IN HOLDING RULE 55, THE SAME BEING SECTION 41–23–55, N. M.S.A., 1953 COMP., GOVERNS PROCEEDINGS IN PRELIMINARY HEARINGS IN MAGISTRATE COURTS." These Rules of Criminal Procedure [§§ 41–23–1 to 55, N.M.S.A.1953 (2nd Repl. Vol. 6, 1972, Supp.1973] were adopted by order of this court and made effective as of July 1, 1972 to cases filed thereafter in district courts and to cases filed thereafter in magistrate courts but not within the trial jurisdiction of the magistrate courts. Rules 1, 2, 20(b) and 55 are as follows:

"*Rule 1—Scope.* These rules govern the procedure in the district courts of New Mexico in all criminal proceedings. In so far as they may be applicable, Rules 3 through 17, 19, 20, 22, 24 and 25 [41–23–3 to 41–23–17, 41–23–19, 41–23–20, 41–23–22, 41–23–24 and 41–23–25] also apply to all proceedings in magistrate court relating to those persons accused of offenses not within magistrate court trial jurisdiction."

"*Rule 2—Purpose and construction.* "These rules are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

"*Rule 20—Preliminary examination.* "(b) *Record of Hearing.* Upon request, a record shall be made of the preliminary examination. If requested, the record shall be filed with the clerk of the district court within ten [10] days after it is requested."

"*Rule 55—Record.* As used in the Rules of Criminal Procedure, 'record' shall mean: (1) stenographic notes which must be transcribed when a 'record' is required to be filed; (2) a statement of facts and proceedings stipulated to by the parties for purposes of review; or (3) any mechanical, electrical or other recording, including a video-tape recording when such method of mechanical, electrical or other recording has been approved by the court administrator. No broadcast or reproduction of any mechanical, electrical or other recording shall be made for any person other than an official of the court without the express written consent of the New Mexico Supreme Court."

It is true, as Petitioners urge, that Rule 1, supra, does not expressly recite that Rule 55 is applicable "to all proceedings in magistrate court relating to those persons accused of offenses not within magistrate court trial jurisdiction." However, as already indicated above, we are of the opinion that a tape recording would constitute an adequate record of the preliminary

hearing in magistrate court, and it would be illogical to hold that a tape recording of this preliminary hearing, if held in the district court, would be adequate and consistent with Rule 55, but, if held in the magistrate court, would be inadequate and inconsistent with Rule 55, simply because Rule 1 did not expressly make Rule 55 applicable to these proceedings in the magistrate court. Rule 55 is merely a definition of a "record." We are unwilling to say a "record" means one thing in district court and another thing in magistrate court, and particularly so since Petitioners are not prejudiced thereby.

Petitioners further argue that since this court has not " * * * adopted rules governing Magistrate Court proceedings in preliminary hearings in so far as the record which must be made is concerned, we, therefore, must look to the statutes of the State which have been enacted by the legislature to cover the rules. * * * " They then cite § 36–21–26, N.M.S.A.1953 (2nd Repl.Vol. 6, 1972), which they say was enacted by the Legislature and is mandatory, and which provides in part:

"*36–21–26. Rule 26—Preliminary examinations.*

"(a) *Conduct of Hearing.* After proceeding in accordance with Rule 25(b) [36–21–25(b)] of these rules and determining that a preliminary examination must be conducted, the magistrate shall proceed to examine the case as follows: " * * *.

"(2) The witnesses shall be examined in the defendant's presence and may be cross-examined by him, and the defendant may be sworn and testify in his own behalf. On the request of either party, the testimony shall be reduced to writing and signed by the witnesses, or recorded stenographically and transcribed by the reporter, and filed with the clerk of the district court. * * * "

They are mistaken about this rule having been enacted by the Legislature. This was a portion of one of the Rules for Criminal Actions in Magistrate Courts adopted by this court and which rules became effec-

tive January 1, 1969. Clearly Rule 20(b) of the Rules of Criminal Procedure above quoted, which was adopted subsequent to the adoption of Rule 26 of the Magistrate Rules for Criminal Actions, is made applicable to the preliminary hearing in question in this cause. Rule 1 of the Rules of Criminal Procedure, supra. Thus, Rule 20(b) of the Rules of Criminal Procedure is the controlling rule, and we look to Rule 55 of the Rules of Criminal Procedure, supra, for a definition of "record."

Petitioners' final contention is that "RULE 55, THE SAME BEING SECTION 41–23–55, N.M.S.A.1953 COMP., AS APPLIED BY THE COURT BELOW AND THE RESPONDENT'S ACTIONS IN REFUSING TO PROVIDE [PETITIONERS] WITH A PROPER RECORD [OF THE PRELIMINARY HEARING] VIOLATES THE DUE PROCESS AND EQUAL PROTECTION PROVISIONS OF THE UNITED STATES OF AMERICA AND THE NEW MEXICO CONSTITUTIONS."

They primarily rely upon Britt v. North Carolina, supra; Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) and Griffin v. Illinois, supra. None of these cases support the position of Petitioners. The Griffin and Mayer cases did call for procedures in criminal trials which prohibit invidious discriminations between persons and different groups of persons. However, this is not a requirement that a certified copy of a court reporter's notes of these proceedings must be always and forever furnished. It means that the State must afford indigents a " 'record of sufficient completeness' to permit proper consideration of their claims." Draper v. Washington, 372 U.S. 487, 499, 83 S.Ct. 774, 780, 9 L.Ed.2d 899, 907 (1963); Mayer v. City of Chicago, supra.

The State " 'may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review to indigent defendants'." Mayer v. City of Chicago, supra, 404 U.S. at 194, 92 S.Ct. at 414, 30 L.Ed.2d at 378. Certainly in view of the approval in Britt v. North

Carolina, supra, of the informal alternative which was available to the defendant in that case, Petitioners in the case now before us cannot be heard to say that because in the past, and apparently in some jurisdictions at the present, a court reporter's transcript is furnished, that such transcript must still be furnished when an equally good verbatim record in the form of an audio recording has been tendered them.

They are not entitled to a written transcript of a court reporter's notes of the preliminary hearing merely because their attorneys have long been accustomed to using such transcripts and sincerely feel they will be unable to use an audio recording of the proceedings with equal facility and effectiveness. As stated above, their attorneys have never tried using such a recording, and, in our judgment, an audio recording of a preliminary hearing is superior to a written transcription of a reporter's notes in preparing for trial, in examining witnesses at trial, and for whatever possible use may be made of a record of a preliminary hearing on appeal.

Affirmed.

It is so ordered.

McMANUS, C. J., and MARTINEZ, J., concur.